UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| ADRAIN MONROE and ANDRELL WHITE, Individually and for Others Similarly Situated, | |
| Plaintiffs, | |
| v. | Case No. 2:23-cv-692 |
| STAKE CENTER LOCATING, LLC, | Jury Trial Demanded |
| Defendant. | Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1.      Adrain Monroe ("Monroe") and Andrell White ("White") (together, "Plaintiffs") bring this class action to recover unpaid wages and other damages from Stake Center Locating, LLC ("SCL").

2.      SCL employed Monroe as one of its Hourly Utility Locators (defined below) in Virginia.

3.      Likewise, SCL employed White as one of its Hourly Utility Locators in Virginia.

4.      Plaintiffs and the other Hourly Utility Locators regularly worked more than 40 hours in a workweek.

5.      But SCL did not pay Plaintiffs and its other Hourly Utility Locators for all the hours they work.

6.      Instead, SCL required Plaintiffs and the other Hourly Utility Locators to work significant time "off the clock" without pay.

7.      Specifically, SCL prohibited Plaintiffs and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket; and SCL required Plaintiffs

and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket (SCL's "ticket to ticket policy").

8.  But to meet SCL's strict productivity requirements, Plaintiffs and the other Hourly Utility Locators were forced to perform compensable work "off the clock" before arriving to their first assigned ticket and after leaving their last assigned ticket.

9.  SCL, however, did not pay Plaintiffs and the other Hourly Utility Locators for the time they spent performing this pre- and post-ticket work "off the clock."

10. SCL's uniform "ticket to ticket" policy violates the Virginia Overtime Wage Act ("VOWA") by depriving Plaintiffs and the other Hourly Utility Locators of overtime wages for all overtime hours worked.

11. Likewise, SCL's uniform "ticket to ticket" policy violates the Virginia Wage Payment Act ("VWPA") by depriving Plaintiffs and the other Hourly Utility Locators of earned wages (at their agreed hourly rates) for all hours worked.

12. Similarly, SCL also required Plaintiffs and its other Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks" (SCL's "meal break policy").

13. SCL therefore does not pay Plaintiffs and the other Hourly Utility Locators for that time.

14. But Plaintiffs and the other Hourly Utility Locators do not actually receive *bona fide* meal breaks.

15. Instead, to meet SCL's strict productivity requirements, Plaintiffs and the other Hourly Utility Locators are forced to perform their regular utility locating duties "off the clock" during their unpaid "meal breaks" for SCL's predominant benefit.

16. SCL's uniform meal break policy therefore violates the VOWA by depriving Plaintiffs and the other Hourly Utility Locators of overtime wages for all overtime hours worked.

17.     Likewise, SCL's uniform meal break policy violates the VWPA by depriving Plaintiffs and the other Hourly Utility Locators of earned wages (at their agreed hourly rates) for all hours worked.

18.     Finally, in addition to failing to pay Plaintiffs and its other Hourly Utility Locators for all their hours worked, SCL also fails to pay these workers overtime wages at the proper premium rate.

19.     Specifically, SCL pays Plaintiffs and its other Hourly Utility Locators taxable vehicle pay, which SCL intentionally excludes when calculating their regular rates of pay for overtime purposes (SCL's "vehicle pay scheme").

20.     Similarly, SCL pays Plaintiffs and its other Hourly Utility Locators taxable per diems, which SCL intentionally excludes when calculating their regular rates of pay for overtime purposes (SCL's "per diem pay scheme").

21.     SCL's vehicle pay scheme and per diem pay scheme violate the VOWA by depriving Plaintiffs and the other Hourly Utility Locators of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for their hours worked over 40 in a workweek.

## JURISDICTION & VENUE

22.     This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

23.     Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Plaintiffs' proposed class of Hourly Utility Locators and SCL are citizens of different states (indeed, Monroe is an Alabama citizen and White is a Georgia citizen, whereas SCL is a North Carolina and Utah citizen); and (c) the proposed class of Hourly Utility Locators exceeds 100 members.

24.     This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

25.     This Court has specific personal jurisdiction over SCL based on SCL's substantial contacts with, and conduct directed towards, Virginia that form the basis of this action.

26.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

27.     Specifically, Plaintiffs worked for SCL in and around Virginia Beach, Virginia, which is in this District and Division

PARTIES

28.     Monroe is an adult individual residing in Montgomery, Alabama.

29.     Monroe worked for SCL as a Utility Locator in and around Virginia Beach, Virginia, from approximately June 2022 through July 2022.

30.     White is an adult individual residing in McDonough, Georgia.

31.     White worked for SCL as a Utility Locator in and around Virginia Beach, Virginia, from approximately July 2022 until August 2022.

32.     Throughout their employment, SCL classified Plaintiffs as non-exempt and paid them on an hourly basis.

33.     Throughout their employment, SCL subjected Plaintiffs to its uniform, illegal "ticket to ticket" and meal break policies.

34.     But throughout their employment, SCL required Plaintiffs to perform compensable work "off the clock" (without pay) before arriving to their first assigned ticket, after leaving their last assigned ticket, and during their "meal breaks" in willful violation of the VOWA and VWPA.

35.     Further, throughout their employment, SCL subjected Plaintiffs to its uniform, illegal vehicle pay scheme and per diem pay scheme, paying them taxable vehicle pay and per diems that SCL

intentionally excluded when calculating their regular rates of pay for overtime purposes in willful violation of the VOWA.

36. Plaintiffs bring this class action on behalf of themselves and other similarly situated hourly, non-exempt SCL Utility Locators in Virginia who are subject to SCL's "ticket to ticket" policy, meal break policy, vehicle pay scheme, and/or per diem pay scheme.

37. SCL prohibits each of these Utility Locators from clocking in until they arrive at their first assigned ticket and requires them to clock out when they leave their last assigned ticket.

38. Likewise, SCL requires these Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

39. But SCL also requires each of these Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket, after they leave their last assigned ticket, and during their "meal breaks."

40. Further, SCL also pays each of these Utility Locators taxable vehicle pay and per diems, which SCL intentionally excludes when calculating their regular rates of pay for overtime purposes.

41. Thus, SCL uniformly deprives its Hourly Utility Locators of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek, including those worked "off the clock," in willful violation of the VOWA.

42. Likewise, SCL uniformly deprives its Hourly Utility Locators of earned wages (at their agreed hourly rates) for all hours worked, including those worked "off the clock," in willful violation of the VWPA.

43. The putative class of similarly situated employees is defined as:

> **All individuals who worked for SCL as hourly Utility Locators in Virginia who were subject to SCL's "ticket to ticket" policy, meal break policy, vehicle pay scheme, and/or per diem pay scheme**

**at any time during the 3 years prior to the filing of this Complaint until final resolution of this action ("Hourly Utility Locators").**

44.    SCL is a Utah limited liability company headquartered in Greensboro, North Carolina.

45.    SCL's sole member is S&N Communications, Inc., which is incorporated and headquartered in North Carolina.

46.    SCL is registered to do business in the Commonwealth.

47.    SCL may be served through its registered agent: **Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219**.

FACTS

48.    SCL bills itself as a utility "locating powerhouse"[1] that provides "utility locating services [to utility owners and operators] across the country[,]"[2] including in Virginia.

49.    To meet its business objectives, SCL hires Utility Locators (including Plaintiffs and the other Hourly Utility Locators) to provide underground utility locating services to its clients in Virginia.

50.    SCL uniformly classifies Plaintiffs and its other Hourly Utility Locators as non-exempt and pays them on an hourly basis.

51.    Plaintiffs and the other Hourly Utility Locators regularly work more than 40 hours a workweek.

52.    But SCL does not pay Plaintiffs and its other Hourly Utility Locators for all their hours worked.

53.    Instead, SCL uniformly subjects Plaintiffs and its other Hourly Utility Locators to its illegal meal break and "ticket to ticket" policies and forces these employees to perform compensable

---

[1] https://www.stakecenter.com/ (last visited December 22, 2023).
[2] https://www.stakecenter.com/service-areas/ (last visited December 22, 2023).

work "off the clock," before they arrive at their first assigned ticket, after they leave their last assigned ticket, and during their "meal breaks."

54.     Likewise, SCL does not pay Plaintiffs and its other Hourly Utility Locators overtime at the proper premium rate.

55.     Instead, SCL uniformly subjects Plaintiffs and its other Hourly Utility Locators to its illegal auto pay policy and per diem pay scheme, paying them taxable auto pay allowances and taxable per diems that SCL intentionally excludes when calculating their regular rates of pay for overtime purposes.

56.     While exact job duties and precise locations may differ, Plaintiffs and the other Hourly Utility Locators are subject to SCL's same or similar illegal policies for similar work.

57.     For example, Monroe worked for SCL as a Utility Locator in and around Virginia Beach, Virginia, from approximately June 2021 through July 2021.

58.     Monroe was SCL's hourly employee.

59.     Indeed, SCL agreed to pay Monroe approximately $20/hour (plus overtime for his hours worked over 40 in a workweek).

60.     Likewise, White worked for SCL as a Utility Locator in and around Virginia Beach, Virginia, from approximately July 2022 until August 2022.

61.     White was SCL's hourly employee.

62.     Indeed, SCL agreed to pay White approximately $21.50/hour (plus overtime for his hours worked over 40 in a workweek).

63.     As Utility Locators, Plaintiffs' primary responsibilities included locating network lines for gas, electrical, cable, and communications companies (SCL's clients) and identifying whether the utility owner's underground utilities conflict with proposed excavation locations.

64.    Throughout their employment, Plaintiffs regularly worked more than 40 hours a workweek.

65.    Indeed, Monroe typically worked 12 to 14 hours a day for 7 days a workweek (or 84 to 98 hours a workweek) "on the clock."

66.    Likewise, White typically worked 10 hours a day for 5 days a workweek (or 50 hours a workweek) "on the clock."

67.    But throughout their employment, SCL subjected Plaintiffs to its illegal "ticket to ticket" policy.

68.    Specifically, SCL prohibited Plaintiffs from clocking in for their shifts until they arrived at their first assigned ticket and required them to clock out for their shifts when they left their last assigned ticket.

69.    But SCL also required Plaintiffs to perform compensable work "off the clock" (without pay) before arriving at their first assigned ticket and after leaving their last assigned ticket.

70.    Specifically, to meet SCL's strict productivity requirements, Plaintiffs were forced to review tickets, route plan, make/take calls from SCL's clients, perform mandatory vehicle inspections on their company-issued vehicles, drive to SCL's facility to pick up any necessary supplies, load their utility locating equipment into their company-issued vehicles, and/or drive to their first assigned ticket "off the clock" and without pay.

71.    Likewise, after clocking out upon completing his last assigned ticket, Plaintiffs were forced to drive to SCL's facility to pick up/drop off any necessary supplies, drive home, unload their utility locating equipment from their company-issued vehicles, perform mandatory vehicle inspections on their company-issued vehicles, review tickets, route plan, make/take calls from SCL's clients, and/or respond to any emergencies "off the clock" and without pay.

72.     This pre- and post-ticket "off the clock" work took Plaintiffs approximately 2 to 3 hours a day (or 10 to 21 hours a workweek).

73.     But under SCL's illegal "ticket to ticket" policy, SCL did not pay Plaintiffs for their mandatory and necessary pre- and post-ticket "off the clock" work.

74.     Similarly, throughout their employment, SCL subjected Plaintiffs to its illegal meal break policy.

75.     Specifically, SCL required Plaintiffs to clock out for 30 minutes a day to account for so-called "meal breaks."

76.     SCL required Plaintiffs to clock out for 30 minutes a day to account for so-called "meal breaks," regardless of whether they actually received a *bona fide* meal break.

77.     But Plaintiffs did not actually receive *bona fide* meal breaks.

78.     Instead, to complete their heavy workloads in accordance with SCL's strict productivity requirements, Plaintiffs were forced to perform their regular utility locating duties "off the clock" during their unpaid "meal breaks."

79.     So, rather than receiving overtime pay for all their hours worked over 40 in a workweek, under its illegal "ticket to ticket" and meal break policies, SCL only paid Plaintiffs for the time they worked between their arrival at their first assigned ticket and their departure from their last assigned ticket, less their 30-minute on-duty "meal break," in willful violation of the VOWA.

80.     Likewise, as a result of its illegal "ticket to ticket" and meal break policies, SCL deprived Plaintiffs of earned wages (at their agreed hourly rates) for the compensable work they performed "off the clock" before they arrived at their first assigned ticket, after they left their last assigned ticket, and during their on-duty "meal breaks" in willful violation of the VWPA.

81.     Further, throughout their employment, SCL failed to pay Plaintiffs overtime wages at the proper premium rate.

82.     Indeed, throughout their employment, SCL subjected Plaintiffs to its uniform, illegal vehicle pay scheme.

83.     Specifically, SCL paid Plaintiffs taxable vehicle pay each workweek, which SCL intentionally excluded when calculating their regular rates of pay for overtime purposes.

84.     Similarly, throughout their employment, SCL subjected Plaintiffs to its uniform, illegal per diem pay scheme.

85.     Specifically, SCL paid Plaintiffs taxable per diems each workweek, which SCL intentionally excluded when calculating their regular rates of pay for overtime purposes.

86.     Thus, under its illegal vehicle pay scheme and per diem pay scheme, SCL failed to pay Plaintiffs overtime wages at a rate not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for the hours they worked over 40 in a workweek in willful violation of the VOWA.

87.     SCL subjects its other Hourly Utility Locators according to the same illegal policies it imposed on Plaintiffs.

88.     Like Plaintiffs, SCL pays its other Hourly Utility Locators on an hourly basis.

89.     Like Plaintiffs, SCL requires its other Hourly Utility Locators to report their hours worked to SCL for approval via SCL's uniform timekeeping and ticketing systems.

90.     Thus, SCL's records show that, like Plaintiffs, the other Hourly Utility Locators regularly work more than 40 hours a workweek.

91.     Indeed, like Plaintiffs, the other Hourly Utility Locators typically work 10 to 14 hours a day for 5 to 7 days a workweek (or 50 to 98 hours a workweek) "on the clock."

92.     SCL also uniformly subjects its other Hourly Utility Locators to the same policies, procedures, and strict operational and productivity requirements that it imposed on Plaintiffs.

93.     SCL uniformly requires Plaintiffs and the other Hourly Utility Locators to complete their work tickets in a timely manner per SCL's company-wide policy.

94.     SCL uniformly pressures and expects Plaintiffs and the other Hourly Utility Locators to complete as many tickets as possible.

95.     And SCL closely supervises and tracks Plaintiffs' and the other Hourly Utility Locators' productivity through its ticketing system to ensure they comply with SCL's uniform expectations and complete their heavy workloads.

96.     In fact, SCL installs GPS trackers and/or dash cams on Plaintiffs' and the other Hourly Utility Locators' company-issued vehicles to monitor all their activities, movements, and locations to ensure they complete their heavy workloads in accordance with SCL's strict productivity and operational requirements.

97.     But, like Plaintiffs, SCL does not pay its other Hourly Utility Locators for all their hours worked.

98.     Instead, like Plaintiffs, the other Hourly Utility Locators are forced to perform compensable work "off the clock" (without pay) before they arrive at their first assigned ticket, after they leave their last assigned ticket, and during their "meal breaks."

99.     Indeed, SCL subjects its other Hourly Utility Locators to its same illegal "ticket to ticket" policy that it imposed on Plaintiffs.

100.    Specifically, SCL prohibits its Hourly Utility Locators (like Plaintiffs) from clocking in for their shifts until they arrive at their first assigned ticket and requires them to clock out for their shifts when they leave their last assigned ticket.

101.    But like Plaintiffs, SCL also requires its other Hourly Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

11

102.    The "off the clock" work Plaintiffs and the other Hourly Utility Locators perform before they arrive at their first assigned ticket and after they leave their last assigned ticket is similar if not the same.

103.    Specifically, before clocking in for their shifts, the other Hourly Utility Locators (like Plaintiffs) are forced to review tickets, route plan, make/take calls from SCL's clients, perform mandatory vehicle inspections on their company-issued vehicles, drive to SCL's facility to pick up any necessary supplies, load their utility locating equipment into their company-issued vehicles, and/or drive to their first assigned ticket "off the clock" and without pay.

104.    Likewise, after clocking out for their shifts at their last assigned ticket, the other Hourly Utility Locators (like Plaintiffs) are forced to drive to SCL's facility to pick up/drop off any necessary supplies, drive home, unload their utility locating equipment from their company-issued vehicles, perform mandatory vehicle inspections on their company-issued vehicles, review tickets, route plan, make/take calls from SCL's clients, and/or respond to any emergencies "off the clock" and without pay.

105.    And like Plaintiffs, the other Hourly Utility Locators spend approximately 2 to 3 hours a day (or 10 to 21 hours a workweek) performing this compensable pre- and post-ticket work "off the clock" without pay.

106.    SCL controls Plaintiffs' and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work, and this "off the clock" work is undertaken primarily for the benefit of SCL's business of providing utility locating services to its clients.

107.    Further, this mandatory pre- and post-ticket "off the clock" work is necessary to the principal work Plaintiffs and the other Hourly Utility Locators perform as SCL Utility Locators.

108.    Indeed, Plaintiffs and the other Hourly Utility Locators cannot provide utility locating services to SCL's clients in accordance with SCL's strict productivity and operational requirements unless they perform this pre- and post-ticket "off the clock" work.

109.    In other words, Plaintiffs' and the other Hourly Utility Locators' mandatory pre- and post-ticket "off the clock" work is a fundamental requirement of their jobs as SCL Utility Locators.

110.    Indeed, SCL could not eliminate this pre- and post-ticket "off the clock" work altogether without impairing Plaintiffs' and the other Hourly Utility Locators' ability to perform their utility locating work for SCL.

111.    Rather, this mandatory pre- and post-ticket "off the clock" work is integral and indispensable to Plaintiffs' and the other Hourly Utility Locators' work as SCL Utility Locators.

112.    Thus, Plaintiffs and the other Hourly Utility Locators routinely perform this mandatory pre- and post-ticket "off the clock" work for SCL's—not their own—predominant benefit.

113.    And SCL knows Plaintiffs and its other Hourly Utility Locators perform this compensable pre- and post-ticket work "off the clock."

114.    Again, SCL closely monitors and tracks Plaintiffs and the other Hourly Utility Locators work time and locations via its company-wide ticketing system, GPS trackers, and/or dash cameras to ensure they meet SCL's strict productivity requirements.

115.    Specifically, using timecard details and GPS data tracked by SCL's uniform ticketing system, SCL can easily determine whether Plaintiffs and the other Hourly Utility Locators are working "off the clock" before and after their shifts.

116.    Thus, SCL management level employees know, or should know, if Plaintiffs and the other Hourly Utility Locators are clocked out and if their vehicles are moving (and, therefore, they are working).

117.    And Plaintiffs and the other Hourly Utility Locators repeatedly complained to SCL management about being forced to work "off the clock" to complete their heavy workloads in satisfaction of SCL's strict productivity and operational requirements.

118.    But SCL fails to exercise its duty as Plaintiffs' and the other Hourly Utility Locators' employer to ensure these employees are not performing work that SCL does not want performed "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

119.    Thus, SCL requested, suffered, permitted, or allowed Plaintiffs and its other Hourly Utility Locators to work "off the clock" before they arrived at their first assigned tickets and after they left their last assigned tickets.

120.    Despite accepting the benefits, SCL does not pay Plaintiffs and its other Hourly Utility Locators for the time they spend performing this compensable work "off the clock."

121.    Thus, under SCL's illegal "ticket to ticket" policy, SCL deprives Plaintiffs and the other Hourly Utility Locators of overtime pay for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket during workweeks in which they work over 40 hours in willful violation of the VOWA.

122.    Likewise, under its illegal "ticket to ticket" policy, SCL deprives Plaintiffs and the other Hourly Utility Locators of earned wages (at their agreed hourly rates) for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket in willful violation of the VWPA.

123.    Similarly, SCL also subjects it other Hourly Utility Locators to the same illegal meal break policy it imposed on Plaintiffs.

124.    Specifically, like Plaintiffs, SCL requires its other Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

125.    SCL requires its Hourly Utility Locators to clock out for 30 minutes a day to record

they took a "meal break" regardless of whether they actually receive *bona fide* meal breaks.

126.    SCL simply assumes Plaintiffs and its other Hourly Utility Locators receive *bona fide* meal breaks.

127.    But, like Plaintiffs, the other Hourly Utility Locators do not actually receive *bona fide* meal breaks.

128.    Instead, to complete their assigned heavy workloads in accordance with SCL's uniform, strict operational and productivity requirements (and SCL's close monitoring of the same), Plaintiffs and the other Hourly Utility Locators are forced to perform their regular utility locating duties and responsibilities "off the clock" during their unpaid "meal breaks."

129.    The "off the clock" work Plaintiffs and the other Hourly Utility Locators perform during their "meal breaks" is similar if not the same.

130.    Specifically, during their unpaid "meal breaks," Plaintiffs and other Hourly Utility Locators regularly perform work-related tasks, such as completing tickets, driving from one ticket to another, taking/making calls to SCL's clients, and/or route planning.

131.    Because of these constant work-related tasks, Plaintiffs and the other Hourly Utility Locators are not free to engage in personal activities during their unpaid "meal breaks."

132.    Thus, Plaintiffs and the other Hourly Utility Locators routinely spend their unpaid "meal breaks" performing work "off the clock" for SCL's—not their own—predominant benefit.

133.    This unpaid "off the clock" work is compensable under the VOWA because SCL knew, or should have known, that: (1) Plaintiffs and the other Hourly Utility Locators were performing unpaid work during their "off the clock" meal breaks; (2) they were interrupted or subject to interruptions with work duties during any attempted meal break; (3) they were not completely relieved of all duties during their meal breaks; (4) they entirely skipped their meal breaks due to work demands; (5) their meal breaks were less than 30 consecutive minutes; (6) they were not free to engage in

personal activities during their meal break because of constant interruptions; and/or (7) they spent their unpaid meal breaks performing their regular utility locating duties for SCL's predominant benefit.

134.    This unpaid "off the clock" work is also compensable under the VWPA because SCL agreed to pay Plaintiffs and the other Hourly Utility Locators set hourly rates of pay for all the hours of work they perform, and SCL fails to pay them for their hours worked "off the clock" during their on-duty "meal breaks."

135.    SCL fails to exercise its duty as Plaintiffs' and the other Hourly Utility Locators' employer to ensure they are not performing work that SCL does not want performed "off the clock" during their unpaid "meal breaks."

136.    And SCL knows Plaintiffs and the other Hourly Utility Locators regularly work "off the clock" during their unpaid "meal breaks."

137.    Specifically, using timecard details and GPS data tracked by SCL's uniform ticketing system, SCL can easily determine whether Plaintiffs and the other Hourly Utility Locators are working "off the clock" during their unpaid "meal breaks."

138.    Despite accepting the benefits, SCL does not pay Plaintiffs and its other Hourly Utility Locators for the compensable work they perform "off the clock" during their unpaid "meal breaks."

139.    Thus, under SCL's illegal meal break policy, SCL deprives Plaintiffs and the other Hourly Utility Locators of overtime pay for their on-duty "meal breaks" during workweeks in which they work over 40 hours in willful violation of the VOWA.

140.    Likewise, under SCL's illegal meal break policy, SCL deprives Plaintiffs and the other Hourly Utility Locators of earned wages (at their agreed hourly rates) for their on-duty meal breaks in willful violation of the VWPA.

141.    Finally, SCL also subjects its other Hourly Utility Locators to the same illegal vehicle pay scheme and per diem pay scheme it imposed on Plaintiffs.

142.    Specifically, like Plaintiffs, SCL pay its other Hourly Utility Locators taxable vehicle pay and taxable per diems each week.

143.    But, just as with Plaintiffs, SCL intentionally excludes the Hourly Utility Locators' taxable vehicle pay and per diems when calculating their regular rates of pay for overtime purposes.

144.    Thus, under SCL's illegal vehicle pay scheme and per diem pay scheme, SCL deprives Plaintiffs and the other Hourly Utility Locators of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for their hours worked over 40 in a workweek in willful violation of the VOWA.

## CLASS ACTION ALLEGATIONS

145.    Plaintiffs incorporate all other paragraphs by reference.

146.    Like Plaintiffs, the other Hourly Utility Locators were victimized by SCL's illegal "ticket to ticket" policy, meal break policy, vehicle pay scheme, and per diem pay scheme.

147.    Other Hourly Utility Locators worked with Plaintiffs and indicated they were paid in the same manner, performed similar work, and were subject to SCL's same illegal "ticket to ticket" policy, meal break policy, vehicle pay scheme, and per diem pay scheme.

148.    Based on their experiences with SCL, Plaintiffs are aware SCL's illegal "ticket to ticket" policy, meal break policy, vehicle pay scheme, and per diem pay scheme were imposed on the other Hourly Utility Locators.

149.    The proposed class of Hourly Utility Locators includes more than 100 individual members.

150.    Thus, the Hourly Utility Locators are so numerous that joinder of all individuals would be impracticable.

151.    The Hourly Utility Locators are known to SCL and can be readily identified through SCL's business and personnel records.

152.    The Hourly Utility Locators are similarly situated in the most relevant respects.

153.    Even if their specific job titles or precise locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages for all hours worked and overtime pay at the proper premium rate for all hours worked over 40 in a workweek.

154.    Therefore, the specific job titles or precise job locations of the various Hourly Utility Locators do not prevent class treatment.

155.    Rather, the Hourly Utility Locators are held together by SCL's uniform, illegal "ticket to ticket" policy, meal break policy, vehicle pay scheme, and per diem pay scheme, which systematically deprived Plaintiffs and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek.

156.    SCL's failure to pay earned wages and overtime wages as required by Virginia wage laws results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Hourly Utility Locators.

157.    SCL's records reflect the number of hours the Hourly Utility Locators recorded they worked each workweek.

158.    SCL's records also show the number of hours the Hourly Utility Locators *actually* worked each workweek.

159.    And SCL's records further show it required the Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

160.    Further, SCL records show it paid its Hourly Utility Locators taxable vehicle pay that SCL excluded when calculating their regular rates of pay for overtime purposes.

161.    Likewise, SCL records show it paid its Hourly Utility Locators taxable per diems that SCL excluded when calculating their regular rates of pay for overtime purposes.

162.    The back wages owed to Plaintiffs and the other Hourly Utility Locators can therefore be calculated using the same formula applied to the same records.

163.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SCL's records, and there is no detraction from the common nucleus of liability facts.

164.    Therefore, the issue of damages does not preclude class treatment.

165.    Plaintiffs' experiences are therefore typical of the experiences of the other Hourly Utility Locators.

166.    Plaintiffs have no interest contrary to, or in conflict with, the other Hourly Utility Locators that would preclude class treatment.

167.    Like each Hourly Utility Locator, Plaintiffs  have an interest in obtaining the unpaid wages owed to them under Virginia law.

168.    Plaintiffs and their counsel will fairly and adequately protect the interests of the other Hourly Utility Locators.

169.    Plaintiffs retained counsel with significant experience in handling complex class action litigations.

170.    A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

171.    Absent this class action, many Hourly Utility Locators likely will not obtain redress for their injuries, and SCL will reap the unjust benefits of violating Virginia wage laws.

172.    Further, even if some of the Hourly Utility Locators could afford individual litigation against SCL, it would be unduly burdensome to the judicial system.

173.    Indeed, the multiplicity of actions would create a hardship to the Hourly Utility Locators, the Court, and SCL.

174.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Utility Locators' claims.

175.     The questions of law and fact that are common to each Hourly Utility Locator predominate over any questions affecting solely the individual members.

176.     Among the common questions of law and fact are:

a.     Whether SCL engaged in a policy and practice of prohibiting its Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket;

b.     Whether SCL engaged in a policy and practice of requiring its Hourly Utility Locators to clock out for their shifts once they left their last assigned ticket;

c.     Whether SCL engaged in a policy and practice of requiring its Hourly Utility Locators to clock out for 30 minutes a day for "meal breaks," regardless of whether they actually received a *bona fide*, uninterrupted meal break;

d.     Whether SCL knew, or had reason to know, it requested, suffered, permitted, or allowed the Hourly Utility Locators to work "off the clock" before they arrived at their first assigned ticket, after they left their last assigned ticket, and/or during their unpaid "meal breaks";

e.     Whether SCL failed to pay its Hourly Utility Locators overtime wages for all overtime hours worked, including those worked "off the clock," in violation of the VOWA;

f.    Whether SCL failed to pay its Hourly Utility Locators earned wages (at their agreed hourly rates) for all hours worked, including those worked "off the clock," in violation of the VWPA;

g.    Whether SCL paid its Hourly Utility Locators taxable vehicle pay that SCL excluded when calculating their regular rates of pay for overtime purposes;

h.    Whether SCL paid its Hourly Utility Locators taxable per diems that SCL excluded when calculating their regular rates of pay for overtime purposes;

i.    Whether SCL failed to pay its Hourly Utility Locators overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for their hours worked over 40 in a workweek in violation of the VOWA;

j.    Whether SCL's decision not to pay the Hourly Utility Locators overtime wages for all overtime hours worked, including those worked "off the clock," was made in good faith;

k.    Whether SCL's decision to not pay the Hourly Utility Locators all their earned wages (at their agreed hourly rates) for all hours worked, including those worked "off the clock," was made in good faith;

l.    Whether SCL's decision to exclude the Hourly Utility Locators' vehicle pay when calculating their regular rates of pay for overtime purposes was made in good faith; and

m.    Whether SCL's violations were willful.

177.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

178.    As part of its regular business practices, SCL intentionally, willfully, and repeatedly violated the VOWA and VWPA with respect to Plaintiffs and the other Hourly Utility Locators.

179.    SCL's illegal "ticket to ticket" policy, meal break policy, vehicle pay scheme, and per diem pay scheme deprived Plaintiffs and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek, which they are owed under Virginia law.

### SCL's VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF VIRGINIA WAGE LAWS

180.    Plaintiffs incorporate all other paragraphs by reference.

181.    SCL knew it was subject to the VOWA's overtime provisions.

182.    SCL knew the VOWA required it to pay non-exempt employees, including Plaintiffs and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

183.    SCL also knew it was subject to the VWPA.

184.    SCL knew the VWPA required it to pay employees, including Plaintiffs and the other Hourly Utility Locators, all wages earned (at the rates SCL agreed to pay them) for all hours of work performed.

185.    SCL knew Plaintiffs and the other Hourly Utility Locators were non-exempt employees entitled to overtime pay.

186.    SCL knew it paid Plaintiffs and the other Hourly Utility Locators on an hourly basis.

187.    SCL knew it also paid Plaintiffs and the other Hourly Utility Locators taxable vehicle pay.

188. SCL knew it also paid Plaintiffs and the other Hourly Utility Locators taxable per diems.

189. SCL knew it included Plaintiffs' the other Hourly Utility Locators' vehicle pay and per diems in their total taxable amount earned on each paystub.

190. SCL knew it represented to Plaintiffs and its other Hourly Utility Locators that their vehicle pay and per diems constituted part of their wages.

191. SCL knew it represented to the IRS that Plaintiffs' and the other Hourly Utility Locators' vehicle pay and per diems were wages.

192. In other words, SCL knowingly classified Plaintiffs' and the other Hourly Utility Locators' vehicle pay and per diems as wages.

193. And SCL knew that all of Plaintiffs' and the other Hourly Utility Locators' wages (including their vehicle pay and per diems) were considered renumeration for overtime purposes under the VOWA.

194. Nonetheless, SCL intentionally excluded Plaintiffs' and the other Hourly Utility Locators' vehicle pay and per diems when calculating their regular rates of pay for overtime purposes in violation of the VOWA.

195. SCL's decision to exclude Plaintiffs' and the other Hourly Utility Locators' vehicle pay and per diems when calculating their regular rates of pay for overtime purposes was neither reasonable, nor was it made in good faith.

196. SCL knew Plaintiffs and each Hourly Utility Locators worked over 40 hours in at least one workweek during relevant period because SCL required them to record their hours worked using its timeclock and ticketing systems.

197. SCL knew the VOWA and VWPA required it to pay employees, including Plaintiffs and the other Hourly Utility Locators, for all hours they performed compensable work.

198. SCL knew that, as Plaintiffs' and the other Hourly Utility Locators' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that SCL did not want performed.

199. SCL knew it prohibited Plaintiffs and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket.

200. Nonetheless, SCL knew Plaintiffs and the other Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket.

201. Likewise, SCL knew it required Plaintiffs and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket.

202. Nonetheless, SCL knew Plaintiffs and the other Hourly Utility Locators performed compensable work "off the clock" after they left their last assigned ticket.

203. SCL knew it controlled Plaintiffs' and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work.

204. SCL knew Plaintiffs' and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work was undertaken for SCL's predominant benefit.

205. SCL knew Plaintiffs' and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work was necessary to the principal work they performed as SCL Utility Locators.

206. SCL knew Plaintiffs' and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work was integral and indispensable to their work as SCL Utility Locators.

207. SCL also knew it failed to provide Plaintiffs and the other Hourly Utility Locators with *bona fide*, uninterrupted meal breaks.

208. SCL knew Plaintiffs and the other Hourly Utility Locators did not actually receive *bona fide*, uninterrupted meal breaks.

209.    SCL knew Plaintiffs and the other Hourly Utility Locators regularly worked during their unpaid meal breaks.

210.    SCL knew Plaintiffs and the other Hourly Utility Locators regularly spent their unpaid meal breaks on-duty and performing their regular utility locating job duties for SCL's predominant benefit.

211.    Nonetheless, SCL required Plaintiffs and the other Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

212.    Thus, SCL knew it requested, suffered, permitted, or allowed Plaintiffs and the other Hourly Utility Locators to work "off the clock" (without pay) before they arrived at their first assigned ticket, after they left their last assigned ticket, and/or during their "meal breaks."

213.    Indeed, SCL knew Plaintiffs and other Hourly Utility Locators complained to SCL's management, HR, and/or their supervisors about being forced to work "off the clock" (without pay) before they arrived at their first assigned ticket, after they left their last assigned ticket, and/or during their "meal breaks."

214.    In other words, SCL knew, should have known, or recklessly disregarded whether Plaintiffs and the other the Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket, after they left their last assigned ticket, and/or during their "meal breaks."

215.    Nonetheless, SCL did not pay Plaintiffs and the other Hourly Utility Locators for the work they performed "off the clock" before they arrived at their first assigned ticket, after they left their last assigned ticket, and/or during their "meal breaks."

216.    Thus, SCL knew, should have known, or recklessly disregarded whether it failed to pay Plaintiffs and the other Hourly Utility Locators for all the hours they performed compensable work.

217.    SCL's decision to prohibit Plaintiffs and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket was neither reasonable, nor was it made in good faith.

218.    SCL's decision to require Plaintiffs and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket was neither reasonable, nor was it made in good faith.

219.    SCL's decision to deduct 30 minutes a day from Plaintiffs' and the other Hourly Utility Locators' recorded work time for "meal breaks" regardless of whether they actually received *bona fide* meal breaks was neither reasonable, nor was it made in good faith.

220.    SCL's failure to pay Plaintiffs and the other Hourly Utility Locators overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

221.    Likewise, SCL's failure to pay Plaintiffs and the other Hourly Utility Locators overtime at the proper premium rate was neither reasonable, nor was its decision not to pay these employees overtime wages at the proper premium rate made in good faith.

222.    And SCL's failure to pay Plaintiffs and the other Hourly Utility Locators all their earned wages (at their agreed hourly rates) for all hours worked was neither reasonable, nor was its decision not to pay these employees all their earned wages (at their agreed hourly rates) for all hours worked made in good faith.

223.    SCL knowingly, willfully, and/or in reckless disregard carried out its illegal "ticket to ticket" policy, meal break policy, and vehicle pay scheme that deprived Plaintiffs and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek in violation of the VOWA and VWPA.

224.    SCL knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the VOWA and VWPA.

225.    Indeed, SCL has been repeatedly sued by employees for failing to pay proper wages, including for the same illegal policies that form the basis of this action. *See, e.g., Holtsclaw v. Stake Center Locating, LLC,* No. 2023-CV-031012 (Co. Dist. Ct., Larimer Cnty.); *Kinsey v. Stake Center Locating, Inc.,* No. 161185/2023 (N.Y. Sup. Ct., New York Cnty.); *Castille v. Stake Center Locating, LLC,* No. D-202-CV-2023-08034 (N.M. 2d Dist. Ct.); *Wolfe v. Stake Center Locating, LLC,* No. 230402591 (P.A. 1st Dist. Ct.); *Loonsfoot v. Stake Center Locating, LLC,* No. 3:23-CV-3171-DWD (S.D. Ill.); *Walker v. Stake Center Locating, LLC,* No. 2:21-CV-00183-JCB (D. Utah).

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE VOWA
### (CLASS ACTION)

226.    Plaintiffs incorporate all other paragraphs by reference.

227.    Plaintiffs bring their VOWA overtime claim on behalf of themselves and the other Hourly Utility Locators pursuant to FED. R. CIV. P. 23.

228.    SCL's conduct violates the VOWA (VA. CODE § 40.1-29.2).

229.    At all relevant times, SCL was subject to the VOWA because SCL was (and is) an "employer" within the meaning of the VOWA.

230.    At all relevant times, SCL employed Plaintiffs and the other Hourly Utility Locators as its covered "employees" within the meaning of the VOWA.

231.    Plaintiffs and the other Hourly Utility Locators are non-exempt employees entitled to overtime wages under the VOWA.

232.    The VOWA requires employers, like SCL, to pay non-exempt employees, including Plaintiffs and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their

regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek. VA. CODE § 40.1-29.2.

233.    SCL violated, and is violating, the VOWA by failing to pay Plaintiffs and the other Hourly Utility Locators overtime wages at rates not less than 1.5 times their regular rates of pay— based on *all* renumeration received—for all hours worked after 40 in a workweek, including hours worked "off the clock" before they arrived at their first assigned ticket, after they left their last assigned ticket, and during their "meal breaks."

234.    SCL's unlawful conduct harmed Plaintiffs and the other Hourly Utility Locators by depriving them of the overtime wages they are owed.

235.    Accordingly, SCL owes Plaintiffs and the other Hourly Utility Locators the difference between the overtime wages actually paid and the proper overtime wages actually earned from July 1, 2021 until final resolution of this action, plus an additional amount as liquidated damages, and treble damages for the period July 1, 2021-June 30, 2022 during which the then in-effect iteration of VOWA allowed for same. VA. CODE §§ 40.1-29(J) and 40.1-29.2.

236.    Because SCL "knowingly" failed to pay Plaintiffs and the other Hourly Utility Locators the proper premium overtime wages for all their overtime hours worked, SCL owes these employees treble damages in an amount equal to three times their unpaid wages. VA. CODE § 40.1-29(J).

237.    Finally, Plaintiffs and the other Hourly Utility Locators are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29(J).

## COUNT II
### FAILURE TO PAY ALL WAGES EARNED UNDER THE VWPA
### (VIRGINIA CLASS)

238.    Plaintiffs incorporate all other paragraphs by reference.

239.    Plaintiffs bring their VWPA claim on behalf of themselves and the other Hourly Utility Locators pursuant to FED. R. CIV. P. 23.

240. SCL's conduct violates the VWPA (VA. CODE § 40.1-29).

241. At all relevant times, SCL was subject to the VWPA because SCL was (and is) an "employer" within the meaning of the VWPA.

242. At all relevant times, SCL employed Plaintiffs and the other Hourly Utility Locators as its covered "employees" within the meaning of the VWPA.

243. The VWPA requires employers, like SCL, to pay employees, including Plaintiffs and the other Hourly Utility Locators, for all the hours of work they perform at the rate(s) agreed to by the parties on their regular, established paydays. VA. CODE § 40.1-29.

244. During the course of their employment, SCL agreed to pay Plaintiffs and each Hourly Utility Locator an hourly rate for all the hours of work they performed.

245. Plaintiffs and each Hourly Utility Locator accepted SCL's offer.

246. But during the course of their employment, SCL failed to pay Plaintiffs and the other Hourly Utility Locators for all the time they worked at the rates SCL agreed to pay them because SCL failed to include the time they worked "off the clock" before they arrived at their first assigned ticket, after they left their last assigned ticket, and during their "meal breaks."

247. Thus, SCL violated, and is violating, the VWPA by failing to pay Plaintiffs and the other Hourly Utility Locators all their earned wages (at the rates SCL agreed to pay them) for all the hours of work they performed for SCL's benefit.

248. SCL's unlawful conduct harmed Plaintiffs and the other Hourly Utility Locators by depriving them of the earned wages they are owed.

249. Accordingly, SCL owes Plaintiffs and the other Hourly Utility Locators their unpaid earned wages (at their agreed hourly rates) from the 3 years prior to the filing of this Complaint until final resolution of this action, plus an equal amount as liquidated damages. VA. CODE § 40.1-29(J).

250.    Because SCL "knowingly" failed to pay Plaintiffs and the other Hourly Utility Locators their earned wages, SCL owes these employees treble damages in an amount equal to three times their unpaid wages. VA. CODE § 40.1-29(J).

251.    Finally, Plaintiffs and the other Hourly Utility Locators are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29(J).

**JURY DEMAND**

252.    Plaintiffs demand a trial by jury on all Counts.

**RELIEF SOUGHT**

WHEREFORE, Plaintiffs, individually and on behalf of the other Hourly Utility Locators, seeks the following relief:

a.    An Order certifying a class action pursuant to FED. R. CIV. P. 23;

b.    An Order appointing Plaintiffs and their counsel to represent the interests of the Hourly Utility Locators;

c.    An Order finding SCL liable to Plaintiffs and the other Hourly Utility Locators for all their unpaid overtime wages owed under the VOWA, plus liquidated damages, and treble damages as applicable;

d.    An Order finding SCL liable to Plaintiffs and the other Hourly Utility Locators for all their unpaid earned wages owed under the VWPA, plus liquidated damages, and treble damages;

e.    Judgment awarding Plaintiffs and the other Hourly Utility Locators all unpaid earned wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the VOWA and VWPA;

f.    An Order awarding attorneys' fees, costs, and expenses;

g.    Pre- and post-judgment interest at the highest applicable rates; and

h.    Such other and further relief as may be necessary and appropriate.

Dated: December 28, 2023.                     Respectfully submitted,

                                              BUTLER CURWOOD, PLC

                                              By: /s/ Zev H. Antell
                                                  Harris D. Butler, III VSB No. 26483
                                                  Craig J. Curwood VSB No. 43975
                                                  Zev H. Antell VSB No. 74634
                                                  Samantha R. Galina VSB No. 96981
                                                  140 Virginia Street, Suite 302
                                                  Richmond, VA 23219
                                                  Phone: (804) 648-4848
                                                  Fax:    (804) 237-0413
                                                  harris@butlercurwood.com
                                                  craig@butlercurwood.com
                                                  zev@butlercurwood.com
                                                  samantha@butlercurwood.com

                                                  Michael A. Josephson*
                                                  Andrew W. Dunlap*
                                                  JOSEPHSON DUNLAP, LLP
                                                  11 Greenway Plaza, Suite 3050
                                                  Houston, Texas 77046
                                                  Phone: (713) 352-1100
                                                  Fax:    (713) 352-3300
                                                  mjosephson@mybackwages.com
                                                  adunlap@mybackwages.com

                                                  Richard J. (Rex) Burch*
                                                  BRUCKNER BURCH, PLLC
                                                  11 Greenway Plaza, Suite 3025
                                                  Houston, Texas 77046
                                                  Phone: (713) 877-8788
                                                  Fax:    (713) 877-8065
                                                  rburch@brucknerburch.com

                                                  *Pro hac vice applications forthcoming

                                                  ATTORNEYS FOR PLAINTIFFS AND
                                                  THE HOURLY UTILITY LOCATORS