IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ADRAIN MONROE &
ANDRELL WHITE,
       *individually and for others*
       *similarly situated*,

       Plaintiffs,

v.                                              Civil Action No.  2:23-cv-692

STAKE CENTER LOCATING, LLC,

       Defendant.

## **MEMORANDUM OPINION**

This matter is before the Court on the Motion to Certify Class filed by Adrain Monroe and Andrell White ("Plaintiffs"), on behalf of themselves and others similarly situated. ECF No. 30. Defendant Stake Center Locating, LLC ("Stake Center") responded, ECF No. 33, and Plaintiffs replied, ECF No. 35. For the reasons stated below, Plaintiffs' Motion to Certify Class is granted in part and denied in part.

## I.    BACKGROUND

Stake Center provides utility locating services for gas, electrical, cable, and communications companies across the country, including in Virginia. Compl. ¶¶ 48–49, 63, ECF No. 1; *see Our Services*, Stake Ctr. Locating, https://perma.cc/2VKW-VB2C (last visited Feb. 21, 2025). Plaintiffs worked as hourly utility locators for Stake Center. They were both based in Georgia but worked for Stake Center in Virginia on temporary assignments. McCullough Decl. ¶¶ 8–14, ECF No. 33-1.[1] Monroe worked in Virginia for approximately two weeks, from July 28,

---

[1]       The first exhibit attached in support of Stake Center's Response to the Motion to Certify Class, ECF No. 33-1, includes the following eight documents: (1) a declaration by Scott McCullough, Stake Center's Human Resources Director; (2) the Stake Center Employee

2022, to August 11, 2022. Monroe GPS Data at 240–41, ECF No. 33-1; *see* Monroe Dep. at 87:13–15, ECF No. 33-9. White worked in Virginia for approximately one week, from July 28, 2022, to August 4, 2022. White GPS Data at 269–71, ECF No. 33-1; *see* White Dep. at 46:3–6, ECF No. 33-8. While working in Virginia, Plaintiffs reported their time to their Georgia-based supervisor; entered their time using the time-keeping system used in Georgia but not in Virginia; but also interacted with supervisors and hourly utility locators based in Virginia. Monroe Dep. at 105:12–25, 108:2–109:1, 129:5–131:20, 254:1–21, ECF No. 31-5; Monroe Dep. at 133:9–22, 103:23–105:11, ECF No. 33-9; White Dep. at 22:3–5, 206:22–207:2, 23:14–22, ECF No. 31-6; White Dep. at 84:1–8, ECF No. 33-8; McCullough Decl. ¶ 14.

Plaintiffs allege that they were not paid fully for all of the hours they worked in Virginia. *See* Compl.; White Decl. ¶¶ 7–17, 24, ECF No. 31-4; Monroe Decl. ¶¶ 7–17, 24, ECF No. 31-3. Plaintiffs recognize that Stake Center's written policies required locators to report all hours worked but claim that two unwritten policies forced them to work "off the clock" and resulted in their not being paid fully. *See* Mem. Supp. at 7, ECF No. 31. Plaintiffs refer to the first of these policies as the "ticket-to-ticket policy." *See* Compl. ¶¶ 7–11. Stake Center generally required locators to clock in when they arrived at their first assigned "ticket" of the day and to clock out when they left their last assigned ticket. Compl. ¶ 7; *see* McCullough Decl. ¶ 6. Plaintiffs allege, however, that locators "were forced to perform compensable work 'off the clock'" prior to their first tickets and after their last tickets, in order to meet Stake Center's "strict productivity requirements." Compl. ¶ 8.

---

Handbook; (3) paystubs for Monroe; (4) paystubs for White; (5) GPS data for Monroe; (6) GPS data for White; (7) time entries for Monroe; and (8) time entries for White. This Opinion's citations to those documents denote the specific document referenced, but employ the pagination assigned by the CM/ECF system to the exhibit as a whole. The Opinion also uses the CM/ECF pagination for all other filings and exhibits cited, with the exception of Monroe and White's depositions, ECF Nos. 31-5, 31-6, 33-8, and 33-9. Citations to the depositions reference the original page numbers on the deposition transcripts, rather than the page numbers assigned by CM/ECF.

The second policy identified by Plaintiffs—the "meal break policy"—refers to Stake Center's requirement that locators take a 30-minute unpaid lunch break each day. *See* Compl. ¶ 12; Employee Handbook at 217–18, ECF No. 33-1. The Stake Center Employee Handbook provides that locators can work through lunch only with permission from a manager or supervisor, and that, if locators are authorized to work through lunch, they will be paid for that time. Employee Handbook at 218. Plaintiffs claim, however, that they were required to work "off the clock" and without pay during meal breaks. Compl. ¶¶ 53, 74–80, 98, 123–40.

Plaintiffs' third and final claim relates to Stake Center's calculation of locators' regular rate of pay for overtime purposes, which Plaintiffs describe as the "vehicle pay scheme." *Id.* ¶¶ 82–83. Stake Center provides locators with company vehicles, which they can use to commute but not for personal travel. McCullough Decl. ¶ 12; *see* Employee Handbook at 40. Because the Internal Revenue Service ("IRS") deems commuting with a company-provided vehicle to be a taxable fringe benefit, Stake Center deducted $1.50 per commute—the rate provided by the IRS's "Commuting Rule"—from locators' pay. *See* IRS Fringe Benefit Guide at 26, ECF No. 33-7. Stake Center then reimbursed locators for that deduction. For a typical week in which a locator commuted twice each day for all five weekdays, $15.00 would be deducted from their paycheck as a "Vehicle Fringe" deduction, and $15.00 would be added to their earnings as a "Vehicle Allowance." *See, e.g.,* Paystubs at 9, ECF No. 31-15. The vehicle allowance, however, was not included in locators' regular rate of pay, and therefore was not factored into their overtime pay rate. Def.'s Resp. Interrogs. ¶ 15, ECF No. 31-16. Plaintiffs claim that this practice resulted in locators not being paid at the lawful overtime rate. *See* Compl. ¶ 86.

Plaintiffs bring their claims under the Virginia Overtime Wage Act and the Virginia Wage Payment Act. *Id.* ¶¶ 226–51. The Virginia Overtime Wage Act requires employers to pay

employees overtime compensation for any hours they work in excess of forty (40) hours per week at an overtime rate of at least one and one-half (1.5) times the regular rate. *See* Va. Code Ann. § 40.1-29.2; 29 U.S.C. § 207(a)(1). The Virginia Wage Payment Act requires employers to pay employees for all work done. *See* Va. Code Ann. § 40.1-29.

Plaintiffs filed their Class Complaint against Stake Center. Stake Center answered. Stake Center then initiated its "Locator Appreciation Bonus Plan" ("Bonus Plan"). *See* Bonus Communication at 1–10, ECF No. 27-1; Resp. Mot. Protect. Order at 1, ECF No. 29. Through the Bonus Plan, Stake Center offered locators $1,000 if they worked 1,000 hours and agreed, among other things, to a mandatory arbitration provision and class action waiver. Bonus Communication at 2–8. Plaintiffs moved for a Protective Order and Corrective Notice regarding Stake Center's communication with employees about the Bonus Plan. Mot. Protect. Order, ECF No. 26.

Plaintiffs then filed the instant Motion to Certify Class, proposing the following class definition:[2]

> All individuals who worked for [Stake Center] as hourly Utility Locators in Virginia who were subject to [Stake Center's] "ticket to ticket" policy, meal break policy, [and] vehicle pay scheme . . . during the 3 years prior to the filing of this Complaint until final resolution of this action.

Mot. at 1, ECF No. 30.

The Court held a hearing on Plaintiffs' Motions for a Protective Order and to Certify Class and granted in part the Motion for Protective Order. Order, ECF No. 43. The Court heard oral argument—but did not rule—on the Motion to Certify Class. *See* Tr., ECF No. 44.

---

[2]    Plaintiffs' initial proposed class definition included reference to Stake Center's "per diem pay scheme." Mot. at 1. Plaintiffs have since indicated that they intend to withdraw that parameter from their proposed definition. Pls.'s Suppl. Br. at 6, ECF No. 50.

After the parties completed their briefing on the Motion to Certify Class, and after the Court heard oral argument, the United States Court of Appeals for the Fourth Circuit decided *Stafford v. Bojangles' Restaurants, Inc.* 123 F.4th 671 (4th Cir. 2024). *Stafford* considered a proposed class definition and Rule 23's requirements for class certification in a similar case alleging off-the-clock work. *Id.* In light of the new binding authority, the Court ordered the parties to supplement their briefing regarding the Motion to Certify Class. Order, ECF No. 47. The parties timely complied, and the Motion is now ripe for disposition. Pls.'s Suppl. Br., ECF No. 50; Def.'s Suppl. Br., ECF No. 51. The Court exercises jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## II.    LEGAL STANDARD

To certify a class action, the Court must find that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23. Under Rule 23(a), the proposed class must meet the following four criteria: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims or defenses are typical of those of the class; and (4) the representative will fairly and adequately represent the interests of the class." *Souter v. Equifax Info. Servs., LLC (Souter IV)*, 307 F.R.D. 183, 195 (E.D. Va. 2015). The commonality, typicality, and adequacy requirements "tend to merge, with commonality and typicality serving as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (cleaned up). In addition to the four explicit Rule 23(a) requirements, class certification also requires that the proposed class be ascertainable, or "readily identifiable." *EQT*

*Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (internal quotation marks and citations omitted) (discussing Rule 23's "implicit threshold requirement" of ascertainability).

The class must also belong to, and satisfy the requirements of, one of three categories provided in Rule 23(b). Fed. R. Civ. P. 23(b). Here, Plaintiffs proceed under Rule 23(b)(3), which means that certification is only proper if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Mem. Supp. at 6. These are known as the "predominance" and "superiority" requirements.

The party seeking class certification—in this case, Plaintiffs—bears the burden of proving that Rule 23's requirements are satisfied by a preponderance of the evidence. *In re NII Holdings, Inc. Secs. Litig.*, 311 F.R.D. 401, 405 (E.D. Va. 2015). On a motion for class certification, "a court should engage the merits of a claim only to the extent necessary to verify that Rule 23 has been satisfied." *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015). Rule 23, however, "holds plaintiffs to a higher bar than a pleading standard." *Stafford*, 123 F.4th at 679 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Plaintiffs moving for class certification "must affirmatively demonstrate [their] compliance with the Rule." *Dukes*, 564 U.S. at 350. The Court must then "take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citation omitted). This means that the class certification analysis will often "entail some overlap with the merits of the plaintiff[s'] underlying claim[s]." *Dukes*, 564 U.S. at 351.

### III.    ANALYSIS

The Court has considered the Rule 23 requirements with respect to each of the three alleged policies or practices underlying Plaintiffs' claims. The analysis and disposition of Plaintiffs' claims regarding the "ticket-to-ticket" and "meal break" policies (collectively, the "off-the-clock work claims") are largely identical. The Court therefore discusses those claims together, and separately from Plaintiffs' claim regarding the vehicle allowance (the "vehicle pay claim").

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is "[n]o specified number" of class members required to meet this threshold, "joinder usually becomes impracticable where the class exceeds 40 members." *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *7 (E.D. Va. Mar. 1, 2017) (citation omitted). Here, Plaintiffs assert that there are at least 240 locators in the proposed class, and Stake Center does not contest that joinder of all members would be impracticable. *See* Mem. Supp. at 12. The Court agrees and finds that Rule 23(a)'s numerosity requirement is satisfied.

#### 2. Commonality

To satisfy Rule 23(a)'s commonality requirement, class members' claims must be based on a "common contention" that is "of such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 350. While class members must have "suffered the same injury," it is not enough to demonstrate that they have "all suffered a violation of the same provision of law." *Id.* (citation omitted). Instead, the "common contention" must be such that "determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In short, "commonality requires that the class present dispositive questions which will propel the case through the system." *Souter IV*, 307 F.R.D. at 200.

### a. Vehicle Pay Claim

Plaintiffs identify the following common question related to the vehicle pay claim: "Whether [Stake Center] was required to include the 'vehicle allowance' paid to Plaintiffs and the Class Members in the regular rate calculation for overtime purposes." Mem. Supp. at 14. Stake Center concedes that this question is conducive to class treatment, noting that "all Utility Locators working in Virginia were subject to [the] vehicle allowance . . . and the question of whether the vehicle pay should be included in [the] regular rate of pay is apt to generate class-wide common answers." *See* Def.'s Suppl. Br. at 6 n.1. Stake Center does not contest that they deduct, and then reimburse, $1.50 per commute based on the vehicle benefit. Resp. at 7, ECF No. 33; Def.'s Resp. Interrogs. ¶ 15. Nor do they contest that the reimbursement is excluded from locators' regular rate of pay when their overtime rate is calculated. Def.'s Resp. Interrogs. ¶ 15. The only remaining question, then, is the legality of the exclusion. Resolving that question is "central to the validity of each one of the [class members' claims]" and can be "resolve[d] . . . in one stroke." *Dukes*, 564 U.S. at 350. Commonality is therefore satisfied with respect to the vehicle pay claim.

### b. Off-the-Clock Work Claims

Plaintiffs assert that this action presents numerous common issues related to their off-the-clock claims, including whether Stake Center's policies, i.e. the ticket-to-ticket and meal break policies, violate the law. Mem. Supp. at 13–15. But there is a logical flaw in this argument. As Stake Center points out, Plaintiffs do not contend that the ticket-to-ticket policy and the meal break policy are themselves unlawful. *See* Def.'s Suppl. Br. at 15–17. And for good reason, as both

policies, as written, appear to be designed to ensure workers are paid for the hours they work by requiring locators to clock in or out when they arrive or depart and to take an unpaid lunch break each day. Instead, Plaintiffs argue that Stake Center maintains unwritten, unlawful (anti-)policies either separate from or contrary to the identified policies. Mem. Supp. at 7. Such a distinction is important because whether the written policies apply to all locators is irrelevant to commonality. Instead, Plaintiffs must establish that the (anti-)policies requiring locators to work off the clock are commonly applied to locators.

The Fourth Circuit's decision in *Stafford v. Bojangles' Restaurants* provides specific guidance for analyzing commonality in class actions alleging off-the-clock, unpaid work.[3] In *Stafford*, the Fourth Circuit considered a Rule 23(b)(3) class action involving Bojangles' shift managers. *See* 123 F.4th at 676–77, 683. The *Stafford* plaintiffs alleged that Bojangles required them to perform compensable tasks without clocking into the timekeeping system (that is, "off the clock"). *Id.* at 676. Those tasks included disabling alarms, checking the parking lot for suspicious activity, cleaning, going to the bank to make deposits, and traveling between store locations. *Id.* at 676–77. The shift managers claimed that they worked off the clock before and after their formal shifts, during unpaid meal breaks, on their way to and from work, and on their days off. *Id.* at 676. The district court found that the Rule 23 requirements were satisfied, specifically holding that the shift managers were "unified by a common theory of being worked off the clock, regardless of the specific uncompensated activities they were required to perform." *Id.* at 680 (internal quotation marks and citation omitted).

---

[3]     Plaintiffs cite heavily, particularly in their arguments regarding commonality, to *Barb v. Heath Consultants, Inc.*, a Western District of Virginia case that certified a class action bringing similar claims against a utility locating service. No. 1:23-cv-58, 2024 WL 3292835 (W.D. Va. July 3, 2024); Mem. Supp. at 13. *Barb* was decided prior to the Fourth Circuit's binding opinion in *Stafford* and the Court does not adopt its reasoning.

The Fourth Circuit vacated and remanded, finding that the plaintiffs had not established commonality under Rule 23(a) or predominance under Rule 23(b)(3). 123 F.4th at 678. The Fourth Circuit directed that, where class claims concern off-the-clock work, the commonality requirement demands more than "conclusory assertions of some highly generalized company policy to have [employees] work without pay." *Id.* at 680. Applying that rule to the facts in *Stafford*, the Fourth Circuit found an absence of "specific documentation or concrete evidence narrowing the broad theoretical policy by which Bojangles allegedly mandated all different forms of off-the-clock work." *Id.* Given the lack of unifying factual support, the Court noted that the plaintiffs' claims would raise "distinct questions," including: "What kind of off-the-clock work did an employee perform?" and "How much time was spent on it?" *Id.*

Rather than providing "concrete evidence" that Stake Center locators in Virginia were subject to a common directive to work off the clock, Plaintiffs assert in a conclusory manner that the "ticket-to-ticket" and "meal break" (anti-)policies were "common to all . . . locators" and "applied universally." Pls.'s Suppl. Br. at 8, 10; Mem. Supp. at 10. A review of their specific allegations and evidence, however, reveals inconsistencies in the parameters of the alleged off-the-clock work, as well as a lack of specificity in communication regarding that work. The Complaint references locators reviewing tickets, planning routes, making client calls, performing mandatory vehicle inspections, picking up supplies, loading and unloading equipment, driving to first assignments, and responding to emergencies, all off the clock. Compl. ¶¶ 103–04. Yet Plaintiffs do not provide evidence that even Monroe and White performed all of these tasks off the clock, much less that every locator in the class performed all of them (or any of them) without pay. For example, Monroe stated that he was required to wash and inspect his company-provided vehicle, perform "locates," and drive to job sites off the clock. Monroe Dep. at 63:14–67:25, 268:18–24, 269:23–

10

270:3, ECF No. 31-5.[4] White, meanwhile, stated that he reviewed tickets off the clock while driving to his first worksite. White Dep. at 124:13–18, ECF No. 31-6. Plaintiffs provide no evidence that Monroe or White picked up supplies or responded to emergencies off the clock while in Virginia. Without such support, the statements of Monroe and White present only a "list of factually diverse claims" that do not indicate "the existence of a uniform company policy." *Stafford*, 123 F.4th at 680.

Additionally, Plaintiffs' statements regarding their own off-the-clock work are equivocal and contingent. For example, Plaintiffs' declarations state that they were required to work through meal periods "if *that's what it took* to complete all [of their] tickets," and that they were "*often* unable to take a meal break." Monroe Decl. ¶¶ 7, 9 (emphasis added); White Decl. ¶¶ 7, 9 (emphasis added). In other words, the extent to which they were required to work off the clock depended on workload and other factors. White also testified that, in the department he worked for in Georgia ("large projects"), there was "time to take a break," while in the department he worked for in Virginia ("production"), "there was no time to take a break." White Dep. at 23:2–7, ECF No. 31-6. In other words, some Stake Center departments and assignments were busier than others. Plaintiffs' own evidence therefore indicates that locators' experiences (or lack thereof) with off-the-clock work would likely vary based on the specific context of their assignment, and on variations in the volume and pace of work. Such variation is fatal to commonality, particularly given the lack of other unifying evidence.

---

[4]    In the portions of Monroe's deposition where he describes washing and inspecting his truck off the clock, he appears to be discussing his experience working for Stake Center in Georgia, rather than in Virginia. *See* Monroe Dep. at 63:14–67:25, ECF No. 31-5. The Court nonetheless assumes, for purposes of this Opinion, that Monroe also performed these tasks off the clock in Virginia.

In addition to these deficiencies, Plaintiffs provide no "documentation or concrete evidence" of commonality with respect to the "specific uncompensated activities" that locators were allegedly required to perform off the clock. *See Stafford*, 123 F.4th at 680. Given the nature of the claims, the Fourth Circuit has recognized that some "evidence of commonality" is necessary regarding the type of work done off the clock. *See id.* For example, a checklist of tasks that must be completed before clocking in would indicate that the same off-the-clock work requirements applied to all employees. *See id.* at 677, 680 (discussing Bojangles' "Opening Checklist"). Here, Plaintiffs offer no such checklist, nor do they offer any other similar evidence to clarify that "the many types of claims plaintiffs advance can be united by a common question of liability."[5] *See id.* at 680. Instead, they point to vague, one-off statements made in informal settings. A field supervisor telling a handful of locators "we work through breaks," for example, does not provide

_____

[5]    In support of their Motion to Certify Class, Plaintiffs also offered emails directing locators to put their work boots on before leaving home. Emails, ECF Nos. 31-13, 31-14. Plaintiffs argue that this requirement shows that Stake Center locators "are on duty from the moment they leave their home." Mem. Supp. at 9; Pls.'s Suppl. Br. at 10. Plaintiffs do not, however, allege that getting dressed for work or putting on one's work boots is a compensable task. For that reason, even if all locators were required to put their boots on prior to leaving the house and clocking in, that requirement does not give rise to a common, colorable claim for unpaid wages. The Court therefore does not find that the emails provide evidentiary support for Plaintiffs' commonality arguments.

Plaintiffs also attached to their Supplemental Briefing time records and GPS data from Monroe and White. White Time Records, ECF No. 50-1; White GPS Data, ECF No. 50-2; Monroe Time Records, ECF No. 50-3; Monroe GPS Data, ECF No. 50-4. Plaintiffs argue that this additional evidence indicates that, at times when they were "clocked out" for lunch, Monroe and White were actually driving between work locations. Pls.'s Suppl. Br. at 9–10. Stake Center contends that the meal periods when Monroe and White were "clocked out" were not entered in real time, and that the GPS data actually indicates that Monroe and White took meal breaks at local restaurants at different times (while clocked in), often for longer than thirty minutes. Def.'s Suppl. Br. at 18–19. The Court finds it unnecessary to engage in this factual dispute. Even if Monroe and White could establish that they did not take *bona fide* meal breaks during their time in Virginia, it would not change the commonality analysis under *Stafford*.

the "documentation" or "concrete evidence" required to establish commonality under *Stafford*. *See* Monroe Dep. at 105:12–25, ECF No. 31-5.

Plaintiffs also argue that the filing of similar class actions in other jurisdictions is indicative of commonality. *See* Pls.'s Suppl. Br. at 10 & n.1. The Court does not credit that argument. Neither of the cited class actions filed in federal district courts against Stake Center have been certified, meaning no other federal court has found that Rule 23's requirements are satisfied. *See Loonsfoot v. Stake Center Locating, LLC*, No. 3:23-cv-3171 (S.D. Ill.); *Holtsclaw v. Stake Center Locating, LLC*, No. 1:24-cv-490 (D. Colo.). And even if Plaintiffs could cite to certification orders in other district courts, this Court agrees with the Ninth Circuit that "passing citations to other district court orders [would] fall short of the rigorous analysis Rule 23[] demands." *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1263 (9th Cir. 2024). Plaintiffs' marshaling of other attempts at class certification in support of this one ignores the fact that the instant class action is premised on Stake Center's practices in Virginia, not nationwide. Plaintiffs have not established that locators in Virginia suffered the common injury of being worked off the clock, and allegations of off-the-clock work in other jurisdictions do not cure that deficiency.

### 3. Typicality

To certify Plaintiffs' proposed class, the Court must find that Monroe and White's claims are "typical" of the class. Fed. R. Civ. P. 23(a)(3). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff[s], so go the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citation omitted). Typicality, however, is contingent upon and intertwined with commonality. If commonality exists only at a very high "level of generality," "then the class representative's proposed point of typicality cannot

attempt to intersect at that juncture." *Souter IV*, 307 F.R.D. at 199–200. In other words, "typicality is meaningless where commonality is not first achieved." *Id.* at 200 (citation omitted).

### a. Vehicle Pay Claim

While Stake Center appears to concede that Plaintiffs' claim regarding the vehicle allowance is suitable for class certification, they argue that Monroe and White are "not proper representatives" to bring this claim on behalf of locators in Virginia. *See* Def.'s Suppl. Br. at 6 n.1. The Court construes this argument as invoking the typicality and adequacy requirements of Rule 23, but finds that both are satisfied with respect to the vehicle pay claim.

Stake Center does not contest that Monroe and White received the vehicle allowance payment during their time working in Virginia. In fact, Stake Center provided paystubs which show that when Monroe and White were working in Virginia they both received the vehicle allowance and that it was not included in the regular rate used to calculate their overtime pay. *See* White Paystubs at 232–33, ECF No. 33-1 (covering periods from July 24, 2022 to August 6, 2022); Monroe Paystubs at 228–30, ECF No. 33-1 (covering periods from July 24, 2022 to August 13, 2022). Stake Center employed workers in Virginia and does not dispute that Monroe and White were protected by Virginia wage-and-hour laws, including the Virginia Overtime Wage Act, during their assignments in Virginia.

Plaintiffs argue that Stake Center was required to include the vehicle fringe payment in locators' regular rate of pay used to calculate their overtime rate. *See* Mem. Supp. at 9. Whether the payment should have been included in the regular rate is a unifying legal question that can be resolved in one stroke. *Dukes*, 564 U.S. at 350. Its resolution does not turn on any factual differences between Monroe and White's employment and those of other locators in the class. Any

14

"variation in claims" does not "strike[] at the heart of the . . . cause[] of action." *Deiter*, 436 F.3d at 467. The Court therefore finds that typicality is satisfied with respect to the vehicle pay claim.

### b. Off-the-Clock Work Claims

Given the relationship between the two requirements, Plaintiffs' failure to establish commonality regarding the off-the-clock work claims is fatal to their ability to establish typicality. *Soutter IV*, 307 F.R.D. at 200. Even if they could satisfy the commonality requirement, however, the Court credits Stake Center's argument that Monroe and White's claims are not typical of the class because of their limited experience with and limited personal knowledge about working for Stake Center in Virginia. *See* Resp. at 18–19. Plaintiffs do not contest that Monroe only worked for Stake Center in Virginia for two weeks, and that White only worked in Virginia for one week. *See* Monroe Dep. at 87:13–15, ECF No. 33-9; White Dep. at 46:3–6, ECF No. 33-8. They argue, however, that based on that limited experience, Monroe and White have sufficient knowledge of Stake Center's practices in Virginia to serve as class representatives. Reply at 15, ECF No. 35. Both Monroe and White testified that they spoke to Virginia-based locators during their assignments about off-the-clock work. Monroe Dep. at 129:17–131:19 (worked through lunch breaks), 133:9–135:11 (inspected and cleaned their vehicles off the clock), ECF No. 33-9; White Dep. at 23:14–18, ECF No. 31-6 (worked through meals). That testimony provides only weak support for the proposition that Monroe and White knew about informal policies encouraging off-the-clock work in Virginia. It provides even less support for a finding that their experiences were typical of other locators in Virginia, many of whom presumably worked in the state for longer than a couple of weeks. This is particularly true given that Monroe and White appear to have remained largely under the supervision of their Georgia-based manager, even while on assignment in Virginia. *See* Sharpe Decl. ¶¶ 5–9, ECF No. 33-4; Monroe Dep. at 108:2–109:1, ECF No. 31-5;

15

White Dep. at 22:3–5, ECF No. 31-6. They therefore can shed little light on the experiences of locators who worked under Virginia-based supervisors.

Stake Center also questions the value of the declarations submitted by Monroe and White in support of their Motion to Certify Class. Resp. at 15–17; Def.'s Suppl. Br. at 18; *see* Monroe Decl.; White Decl. This Court has found that affidavits not based on personal knowledge lack the "time-tested predicate for reliability" and should not be credited in determining whether to certify a class action. *Souter v. Equifax Info. Servs. LLC (Souter III)*, 299 F.R.D. 126, 129, 133 (E.D. Va. 2014). Here, Monroe and White's declarations are nearly identical. *Compare* Monroe Decl., *with* White Decl. Each declaration contains bald assertions that are unsupported by factual detail. For example, both declarations state that "[Stake Center's] managers uniformly told me and other Utility Locators to work through meal periods if that's what it took to complete all our tickets" and that "all [Stake Center] Utility Locators regularly worked more than 40 hours in a workweek." Monroe Decl. ¶¶ 7, 19; White Decl. ¶¶ 7, 19. Yet the declarations provide no basis regarding Monroe or White's personal knowledge of what managers "uniformly" told other locators, or of what "all" locators "regularly" did. This lack of factual foundation is particularly concerning given the breadth of the statements in the declarations as well as the "cookie-cutter" nature of the declarations. *See Smith v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2021 WL 6881062, at *7–8 (E.D. Va. Dec. 21, 2021) (finding "identical declarations" to be "unhelpful to the court"). For those reasons, the Court gives the declarations minimal weight in its analysis.[6] Given the generally sparse evidence regarding the extent to which Monroe and White's experiences aligned with those

---

[6]     Plaintiffs attached to their supplemental briefing an additional declaration from Robert Bellamy, a locator who also worked for Stake Center in Virginia. Bellamy Decl., ECF No. 50-5. The Court finds that this declaration also contains general statements lacking in factual detail and weighs it accordingly. *See, e.g., id.* ¶ 26 ("To my knowledge, all [Stake Center] Utility Locators didn't get paid for all hours worked.").

of other locators in Virginia, the Court finds that Rule 23's typicality requirement is not satisfied for Plaintiffs' claims regarding off-the-clock work.

### 4. Adequacy

To satisfy Rule 23's adequacy requirement, the class representatives must "be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (cleaned up). Plaintiffs must also establish that the class representatives "do[] not have interests antagonistic to those of the class[,] and . . . [that] plaintiff[s'] attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567–68 (E.D. Va. 2016) (internal quotation marks and citation omitted). Here, Stake Center does not contest the ability of Plaintiffs' counsel to adequately conduct the litigation.

#### a. Vehicle Pay Claim

For the reasons stated above in the Court's analysis of the typicality factor, the Court finds that Monroe and White are adequate class representatives for the vehicle pay claim. *See supra* Part III.A.3.a. Monroe and White were both employed in Virginia and were subject to the vehicle fringe deduction and reimbursement during that period. *See* Monroe Paystubs at 228–30 (covering period from July 24, 2022 to August 13, 2022); White Paystubs at 232–33 (covering periods from July 24, 2022 to August 6, 2022). They therefore "possess the same interest" and "suffer[ed] the same [alleged] injury" as other locators in Virginia. *See Amchem*, 521 U.S. at 625–26 (cleaned up).[7]

---

[7]    Stake Center argues that Monroe and White are not adequate or typical class representatives because some members of the putative class have signed an agreement to arbitrate employment-related claims against Stake Center, while Monroe and White have not. Resp. at 19–20. As a threshold matter, the Court has ruled that Stake Center's communication regarding the arbitration agreement and the Locator Appreciation Bonus Plan was misleading and warrants

*b. Off-the-Clock Work Claims*

With respect to the off-the-clock work claims, Monroe and White are not adequate representatives for the same reasons stated with respect to the commonality and typicality factors. *See supra* Parts III.A.2.b, III A.3.b. Given their short period of work in Virginia and their inability to establish a common, concrete practice or policy of off-the-clock work in Virginia, the Court finds that Monroe and White cannot "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

5. Ascertainability

In order to certify a class action, the Court must also find that the proposed class is ascertainable. This means that the Court "must be able to readily identify the class members in reference to objective criteria . . . without extensive and individualized fact-finding or mini-trials." *Souter IV*, 307 F.R.D. at 196 (quoting *EQT Prod. Co.*, 764 F.3d at 358) (internal quotation marks omitted).

*a. Vehicle Pay Claim*

The Court finds that ascertainability is satisfied with respect to the vehicle pay claim. Class members can be identified using three objective criteria: (1) whether they were paid overtime in

_____

judicial intervention under Rule 23(d). Order, ECF No. 43. All locators who agreed to the arbitration provision will be given the opportunity to claw-back that agreement.

At this stage in the litigation, and in light of the Court's Order, it is unclear how many locators will ultimately have signed arbitration agreements. It is also "unclear . . . to what extent [Stake Center] will seek to uphold those agreements." *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 350 (D. Md. 2012). The Court therefore finds that "the possible arbitration [or other contractual bar] of some class members does not, by itself, defeat class certification." *Id.* (internal quotation marks and citation omitted) (alteration in original). If needed, Stake Center can move this Court to amend its class certification order following the end of the opt-out period. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 846, 860–63 (D. Md. 2013) (finding arbitration and other contractual provisions enforceable, and amending prior class definition to exclude individuals bound by those provisions).

at least one pay period; (2) whether, during the same pay period(s), they were subject to the vehicle fringe deduction and received the vehicle allowance reimbursement; and (3) whether the vehicle allowance reimbursement was included in the regular rate of pay used to calculate the overtime rate. All three of these questions can be answered by looking at locators' paystubs. Stake Center has already provided Plaintiffs with a list of locators who had a company vehicle, and seemingly concedes that the vehicle allowance reimbursement was uniformly excluded from the locators' regular rate of pay. *See* Putative Class Info., ECF No. 31-18 (noting which locators had company vehicles); Def.'s Resp. to Interrogs. ¶ 15 (describing regular rate of pay calculation). It is therefore simple to identify locators who would have a claim if that exclusion is found to be unlawful.

### b. Off-the-Clock Work Claims

Even if the other Rule 23 requirements were met with respect to Plaintiffs' off-the-clock work claims, the Court could not, in adjudicating those claims, "readily identify the class members in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d at 358. Identifying whether any given locator is a class member would require a "determination[] on the merits." *See Souter IV*, 307 F.R.D. at 197. The Court would have to determine not only whether the locator worked in Virginia, but whether they were subject to unwritten and informal directions to work off the clock. Far from being based on objective criteria, those questions could only be answered by gathering additional and individualized evidence and would likely require the Court to make credibility determinations. This is precisely the need for "individualized fact-finding" or "mini-trials" that defeats ascertainability. *EQT Prod. Co.*, 764 F.3d at 358.

**B. Rule 23(b)(3)**

<u>1. Predominance</u>

"Rule 23(b)(3)'s predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (quoting *Amchem*, 521 U.S. at 623–24). In other words, "the Rule 23 inquiry does not end upon the identification of a common question alone." *Stafford*, 123 F.4th at 679. The common contention "must [also] predominate over all other individualized issues." *Id.*

*a. Vehicle Pay Claim*

The Court finds, and Stake Center does not dispute, that the common legal question underlying the vehicle pay claim predominates over individualized issues. "Rule 23(b)(3)'s commonality-predominance test is qualitative rather than quantitative." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010). Where "common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Id.* (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)) (internal quotation marks omitted). The dispositive common question is whether Stake Center was legally required to include the vehicle allowance in locators' regular rate of pay. Once that question is resolved, the only remaining "individualized issue" is the extent of each locators' damages. *See Stafford*, 123 F.4th at 679. The Court is therefore satisfied that, with respect to this claim, the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gariety*, 368 F.3d at 362.

*b. Off-the-Clock Work Claims*

"Rule 23(b)(3)'s predominance requirement is necessarily intertwined with Rule 23(a)'s commonality requirement." *Stafford*, 123 F.4th at 679. Here, Plaintiffs have failed to satisfy the commonality requirement for their claims regarding off-the-clock work. *See supra* Part III.A.2.b. Because Plaintiffs have not established that those claims are based on a "common contention," they, by implication, have not established that a common contention predominates over individualized issues.

2. Superiority

Rule 23(b)(3)'s superiority prong requires that the proposed class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In analyzing superiority, the Court considers the following four factors: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). Fundamentally, this inquiry requires the Court "to find that the objectives of the class-action procedure really will be achieved in the particular case." *Stillmock*, 385 F. App'x at 274 (quoting 7AA Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1779 (3d ed. 2005)).

*a. Vehicle Pay Claim*

The Court finds that class-wide adjudication of the vehicle pay claim will achieve the objectives of class litigation. "The advantage of the class action device has frequently been recognized in situations where it enables persons with claims of small individual injuries to pool

their resources to wage a fight to vindicate their rights." *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 49–50 (E.D. Va. 1981). As Plaintiffs point out, the potential damages for each individual class member in this case are relatively small, especially compared to the costs of litigating their claims individually. Mem. Supp. at 19. That is particularly true once the action is narrowed to include only the vehicle pay claim. Stake Center does not contend, and the Court does not find, that any of the other Rule 23(b)(3) factors undermine the superiority of class litigation with respect to this claim.

### b. Off-the-Clock Work Claims

Given that Plaintiffs have not satisfied other dispositive requirements of Rule 23 with respect to the off-the-clock work claims, the Court finds it unnecessary to separately analyze superiority at any length. "A relevant consideration in analyzing superiority is the amount of time and attention required to settle the common questions compared with that needed for the resolution of individual issues." *Branch v. GEICO*, 323 F.R.D. 539, 553 (E.D. Va. 2018) (quoting *Cameron-Brown Co.*, 92 F.R.D. at 42) (cleaned up). As the Court has previously found, adjudicating Plaintiffs' claims regarding off-the-clock work would raise fact-intensive individual issues. *See supra* Parts III.A.2.b, III.B.1.b. The "time and attention" required to resolve those issues would far outweigh the "time and attention" required to settle any common questions. Superiority is therefore not satisfied with respect to the off-the-clock work claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have satisfied Rule 23's class certification requirements with respect to the vehicle pay claim, but not with respect to their other claims. The Court therefore grants in part and denies in part Plaintiffs' Motion to Certify Class,

ECF No. 30. An appropriate order shall issue certifying the class with respect to the vehicle pay claim and providing direction to the parties with respect to the class notice form.

_____ /s/ _____
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: March 27, 2025